```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| SAVERIO LACROCE, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| v. | Civil Action<br>No. 14-7329 (JBS/KMW) |
| M. FORTUNA ROOFING, INC. AND MICHAEL FORTUNA | **OPINION** |
| Defendants/<br>Third Party<br>Plaintiffs, | |
| v. | |
| A PLUS ROOFING AND CONTRACTING, INC. AND POLYGLASS USA INC., | |
| Third Party Defendants. | |

APPEARANCES:

Salvatore J. Siciliano, Esq.
SICILIANO & ASSOCIATES, LLC
16 South Haddon Ave., P.O. Box 25
Haddonfield, NJ 08033
    Attorney for Plaintiff

Dante B. Parenti, Esq.
HOFFMAN DIMUZIO
1739-1753 Delsea Dr., P.O. Box 285
Franklinville, NJ 08322
    -and-
John J. Delany, III, Esq.
DELANY McBRIDE
36 Euclid St.
Woodbury, NJ 08096
    Attorney for Defendants/Third-Party Plaintiffs M. Fortuna
    Roofing, Inc. and Michael Fortuna

John J. Van Dyken, Esq.
MINTZER SAROWITZ ZERIS LEDVA & MEYERS LLP
2070 Springdale Rd., Suite 400
Cherry Hill, NJ 08003
    Attorney for Third-Party Defendant A Plus Roofing and
    Contracting, Inc.

Philip John Degnan, Esq.
MARKS O'NEIL O'BRIEN & COURTNEY
6981 N. Park Dr., Suite 300
Pennsauken, NJ 08109
    Attorney for Third-Party Defendant Polyglass USA Inc.

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

Pending before the Court are unopposed motions for summary judgment filed by Third-Party Defendants Polyglass U.S.A. (hereinafter, "Polyglass") and A Plus Roofing and Contracting, Inc. (hereinafter, "A Plus") against Defendants/Third-Party Plaintiffs M. Fortuna Roofing, Inc. and Michael Fortuna (hereinafter, "Fortuna") (collectively, "Defendants"). The motions arise from a breach of contract and negligence action in which Plaintiff Saverio Lacroce (hereinafter, "Plaintiff") filed suit against Defendants after an alleged malfunctioning of a newly-installed polyglass roof on his commercial property. For the following reasons, the Court grants both motions for summary judgment.

## II. BACKGROUND[1]

### A. Factual Background

On September 22, 2011, Defendants entered into a written agreement with Plaintiff for the installation of an approximate 56,000 square-foot new roof system consisting of white polyglass "G Torch" applied surface material at Plaintiff's property on 815 Hylton Road, Pennsauken, New Jersey 08110. (A Plus Statement of Material Facts at ¶ 1; Ex. B.)  The "G Torch was manufactured by Polyglass." (Polyglass SMF at ¶ 1, 4.)  A written contract existed between Plaintiff and Fortuna, but no written agreement existed between Plaintiff and A Plus or Fortuna and A Plus regarding the roof repair. (A Plus SMF at ¶ 2.)

As part of Plaintiff's "attempt to save money," he ordered materials and directly paid a supplier, Ivan Roofing Supply Co., instead of using Defendants' products. (Ex. F. to A Plus's SMF.) When the materials arrived at Plaintiff's property, Defendants "noticed a problem with the materials in that they were not consistent in quality and some materials appeared almost as seconds." (Id.)  Defendants were advised by Plaintiff "to

---

[1] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits accompanying both pending motions for summary judgment. Because Defendants failed to oppose either motion, all facts contained within the Third-Party Defendants' Statements of Material Facts are deemed admitted for the purposes of this motion. See L. Civ. R. 56.1(a)("[A]ny material fact not disputed shall be deemed undisputed for the purposes of the summary judgment motion.").

install the questionable materials anyway." (Id.)  Defendants and A Plus then installed the new roof as directed. (Id.)

Mr. Fortuna applied for the construction permit for the roof repair, directly received all payments for the work from Plaintiff, and was also the contractor on record for the repair. (A Plus SMF at ¶¶ 4-6.)  Defendants considered the A Plus workers as "associates," not subcontractors, meaning that Defendants were the "contractor of record" but A Plus personnel were "working with" Mr. Fortuna. (Fortuna Dep. at 73: 7-9.) However, Mr. Fortuna did not know whether the A Plus workers, which included "four to six Hispanic workers that were [Mr. Lichter's crew]," were considered employees or independent contractors. (Id. at 240: 1-7.)  Mr. Fortuna observed Mark Lichter, President of A Plus, "moving product, doing setup" and "moving guys around," but saw only Mr. Lichter's crew using a torch. (Id. at 249: 5-25.)

Defendants commenced work at Plaintiff's property in late October 2011, and completed the work in January 2012. (Polyglass SMF at ¶ 5.)  Defendants paid A Plus six times via cash and kept receipts of the transactions. (Ex. E to A Plus's SMF).

Approximately "a year or so" after the installation, a series of problems occurred with the roof. (Id.)  After air conditioning units needed to be replaced due to vandalism, "water started to enter the building . . . causing leaks." (Id.)

4

Defendants claim that the leaking roof was caused by a defective product manufactured by Third-Party Defendant Polyglass, specifically regarding defective "salvage edges," also known as "adhesive edges." (A Plus SMF at ¶ 10; Polyglass SMF at ¶ 6-7.) When Mr. Fortuna had received various deliveries during the install, he claimed that some of the rolls had salvage edges significantly shorter than manufacturing specifications, but after discussing the issue with Plaintiff, he decided to install the rolls anyway. (Polyglass SMF at ¶¶ 7-9.)  Steven Wadding, technical services manager at Polyglass, testified that the investigation performed by Polyglass revealed no manufacturing defects, but only improper installation. (Id. at ¶ 16.)

### B. Procedural History

Plaintiff filed a Complaint against Defendants on November 24, 2014, asserting breach of contract and negligence claims. [Docket Item 1.]  On January 8, 2015, in addition to filing their Answer to Plaintiff's Complaint, Defendants brought a Third-Party Complaint against Third-Party Defendants Polyglass and A Plus. [Docket Item 8.]  Defendants asserted breach of contract and negligence claims against A Plus, as well a manufacturing defect claim against Polyglass. (Id.)  Polyglass filed its motion for summary judgment on July 20, 2016 [Docket Item 56], and A Plus filed its motion for summary judgment on

5

July 21, 2016. [Docket item 57.]  Third-party Plaintiffs did not file opposition to either motion.

### III. STANDARD OF REVIEW

This Court exercises diversity jurisdiction under 28 U.S.C. § 1332, and New Jersey law supplies the rule of decision. Where, as in the instant case, a summary judgment motion is unopposed, Rule 56(e)(3), Fed. R. Civ. P. still requires the Court to satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.[2]  See also Anchorage

---

[2] Rule 56(e), Fed. R. Civ. P. was amended in 2010 to address the situation where a party fails to oppose a motion for summary judgment.  Rule 56(e) gives the court options when considering a summary judgment motion that is unopposed in whole or in part, providing:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order.

Under Rule 56(e)(3), one of those options is to grant summary judgment if the motion and supporting materials show that the movant is entitled to it.  The Advisory Committee Notes for Rule 56(e) (2010 Amendments) explain that granting summary judgment on the unopposed motion is not automatic, as "[c]onsidering some facts undisputed does not of itself allow summary judgment . . . .  Once the court has determined the set of facts – both those it has chosen to consider undisputed for want of a proper response or reply and any that cannot be genuinely disputed despite a procedurally proper response or reply – it must determine the

6

Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990)(interpreting prior version of Rule 56). Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute of "material" fact exists where a reasonable jury's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. Id. Conclusory, self-serving submissions cannot alone withstand a motion for summary judgment. Gonzalez v. Sec'y of Dept. of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) (internal citations omitted).

Further, in an unopposed motion, a movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts ("SUMF") receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion.

---

legal consequences of these facts and permissible inferences from them." Notes of the Advisory Committee, Rule 56(e)(2010 Amendments). Thus, the suggested practice is to make an independent determination whether the unopposed record warrants awarding summary judgment to the movant.

See L. Civ. R. 56.1 (providing that "any material fact not disputed shall be deemed undisputed for the purposes of the summary judgment motion"). Accordingly, where a properly filed and supported summary judgment motion is unopposed, it would be an exceptional case where the court concludes that summary judgment should nonetheless be denied or withheld, although the Court has discretion to do so if unsatisfied that the law and facts point to judgment as a matter of law.

**IV. DISCUSSION**

    **A. Polyglass U.S.A., Inc. Motion for Summary Judgment and Sanctions**

Defendants filed a letter on September 20, 2016 explaining that they do not oppose Polyglass's motion for summary judgment, and agreed to the dismissal of the manufacturing defect claim against Polyglass in its Third Party Complaint. [Docket Item 60.] As a result, Defendants/Third Party Plaintiffs' Third Party Complaint is dismissed as to Polyglass, as well as any and all cross claims asserted by co-defendants.

Polyglass also seeks attorneys' fees and costs from Defendants pursuant to the New Jersey Frivolous Claims Act, N.J.S.A. 2A:15-59.1, which is typically brought in state court pursuant to N.J. Ct. R. 1:4-8, and is "patterned after Rule 11 of the Federal Rules of Civil Procedure." Marenbach v. City of Margate, 942 F. Supp. 2d 488, 496 (D.N.J. 2013)(citations

8

omitted). N.J.S.A. 2A:14-59.1(b) provides that "in order to find that a complaint . . . was frivolous, the judge shall find" that either "(1) the complaint . . . was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury, or (2) [t]he non-prevailing party knew, or should have known, that the complaint . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification, or reversal of existing law." Polyglass seeks sanctions against Defendants because after the January 7, 2016 deposition of Mr. Fortuna, Defendants "continued to pursue this matter" even though Defendants' counsel "was aware of all facts that negated liability in this case as to [Polyglass]." (Polyglass Br. at 15.) After that January 7 deposition, counsel for Polyglass sent a letter to counsel for Defendants explaining that after "extensive discovery in this matter," "[t]here is absolutely no evidence, other than [Mr. Fortuna's] unsupported testimony, of any 'manufacturing defect' with regard to the materials utilized at [the] jobsite." (Ex. H. to Polyglass Br.) Furthermore, counsel for Polyglass wrote that "[a]ny continued litigation against my clients is frivolous and must immediately cease." (Id.) Counsel for Polyglass "received no response" from counsel for Defendants. (Polyglass Br. at 14.) Then, after Polyglass filed its motion for summary judgment on July 20, 2016, which

9

included arguments related to sanctions, Defendants failed to oppose the motion, and instead, two months later, on September 20, 2016, submitted a letter to the Court agreeing to the dismissal of Polyglass from the case. [Docket Item 60.] Counsel for Polyglass argues that Defendants' actions forced Polyglass "to expend defense costs, despite the glaring reality that no cause of action existed here." (Polyglass Br. at 15.)

Despite the troubling conduct exhibited by Defendants' counsel, the Court will not award sanctions under N.J. Ct. R. 1:4-8, N.J.S.A. 2A:15-59.1, or Rule 11, Fed. R. Civ. P. at this time.  Under any of the sanctions rules, the party seeking sanctions "must file an independent motion or application, separate from any substantive motion that party files." Marenbach, 942 F. Supp. 2d at 498; Fidanzato v. Somerset, Hunterdon, and Warren Counties Vicinage 13, No. 11-5132, 2012 WL 4508008, at *9 (D.N.J. Sept. 28, 2012) (explaining that "a party wishing to avail itself of the NJFCA must proceed by way of motion); see also N.J.S.A. 2A:15-59.1(c) ("A party . . . seeking an award under this section shall make application to the court which heard the matter.  The application shall be supported by an affidavit."); N.J. Ct. R. 1:4-8(b)(1)) ("An application for sanctions under this rule shall be by motion made separately from other applications and shall describe the specific conduct alleged to have violated this rule."); Fed. R. Civ. P. 11(c)(2)

10

("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).").

Polyglass makes its request for attorneys' fees and costs pursuant to the New Jersey Frivolous Claims Act as part of its motion for summary judgment briefing. This is procedurally improper. Should Polyglass wish to pursue its request for attorneys' fees and costs, it should do so in accordance with the proper procedure set forth by the applicable rules.[3] This includes submitting an independent motion for sanctions outside of its summary judgment briefing, as well as an affidavit stating in detail: "[t]he nature of the services rendered, the responsibility assumed, the results obtained, the amount of time

---

[3] Ordinarily, Rule 11, Fed. R. Civ. P., provides the procedure in federal court for seeking sanctions against a party which has filed a pleading lacking a reasonable basis in law or fact. The Court makes no determination whether the New Jersey statute in N.J.S.A. 2A:15-59.1 governs such a motion in federal court. Under the command of Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), and Hanna v. Plumer, 380 U.S. 460 (1965), this federal court, exercising diversity jurisdiction over a claim arising at state law, is obliged to apply state substantive law while always applying federal procedural rules. Whether a motion made under authority of N.J.S.A. 2A:15-59.1 is substantive (and thus state law applies) or procedural (in which case a state procedural statute will not apply) need not be determined at present because the present motion is defective under both schemes of § 2A: 15-59.1 and Rule 11, Fed. R. Civ. P. See also Marenbach, 942 F. Supp. 2d at 491 n.6. Where, as here, the party seeking sanctions has not filed a claim for frivolous litigation under N.J.S.A. 2A: 15-59.1, it is doubtful that the statute can play the procedural role of Rule 11.

spent by the attorney, any particular novelty or difficulty, the time spent and services rendered by secretaries and staff, [and] other factors pertinent in the evaluation of the services rendered." N.J.S.A. 2A:15-59.1(c)(1); see also Cole v. Town of Morristown, 627 F. App'x 102, 107 (3d Cir. 2015) (affirming the denial of sanctions because the motion "did not comply with mandatory requirements," including the affidavit outlining expenses and fees under N.J.S.A. 2A:15-59.1(c)).  Thus, the Court denies Polyglass' request for sanctions without prejudice.[4]

### B. A Plus Roofing and Contracting, Inc. Motion for Summary Judgment

While Defendant did not submit an opposition to A Plus's motion for summary judgment, Defendants did not agree to dismiss the counts against A Plus, as it did for Polyglass.  Because the Court has an independent obligation to determine whether summary judgment is appropriate on any particular point, the Court will address the motion on the merits. See Anchorage Assocs. V. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir.

---

[4] Should Polyglass wish to file its motion for sanctions appropriately, it "shall be filed with the court no later than 20 days following the entry of final judgment." N.J. Ct. R. 1:4-8(b)(2).  This contrasts with L. Civ. R. 11.3, which provides that "[a]ll applications for sanctions pursuant to Fed. R. Civ. P. 11 shall be filed . . . prior to the entry of final judgment."  Because claims between Plaintiff and Defendants remain to be determined, the prospect of entry of final judgment is not imminent and substantial time remains to file a Rule 11 motion; any Rule 11 motion for costs and attorneys' fees must be accompanied by an affidavit comporting with L. Civ. R. 54.2.

12

1990) ("[T]his does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond"); <u>Harley v. Geithner</u>, No. 07-3559, 2010 WL 3906642, at *9 (D.N.J. Sept. 29, 2010) (declining to find that Plaintiff had conceded certain issues to Defendant because he did not file an opposition).

Upon an independent review of the record, however, the Court is persuaded that summary judgment is appropriate for Third-Party Plaintiffs' breach of contract claim and negligence claim because, upon the facts of record, they cannot meet their initial prima facie burden, as now explained.

### 1. Breach of Contract

First, A Plus argues that it is entitled to summary judgment on Defendants' breach of contract claim because Defendants have failed to identify with any particular definiteness any contractual terms breached by A Plus, and that there was no defined obligation under the contract.  The Court agrees.

In New Jersey, a plaintiff must allege four elements to state a claim for breach of contract: (1) a valid contract "containing certain terms," (2) plaintiff "did what the contract required them to do" (3) defendant's breach of the contract, and (4) damages resulting from that breach. <u>See</u> <u>Globe Motor Co. v. Igdalev</u>, 139 A.3d 57, 64 (N.J. 2016)(citations omitted).

13

Regarding the first element, a contract arises from offer and acceptance, and must be sufficiently definite so that the performance to be rendered by each party can be ascertained with reasonably certainty. <u>Baer v. Chase</u>, 392 F.3d 609, 619 (3d Cir. 2004) (citing <u>Weichert Co. Realtors v. Ryan</u>, 608 A.2d 280, 284 (N.J. 1992)). "An agreement so deficient in the specification of its essential terms that the performance by each party cannot be ascertained with reasonable certainty is not a contract, and is not an enforceable one." <u>Baer</u>, 392 F.2d at 619 (citations omitted). Additionally, to prevail on a breach of contract claim, a party must prove the opposing party's failure to perform a defined obligation under the contract. <u>EnviroFinance Group, LLC v. Envtl. Barrier Co., LLC</u>, 113 A.3d 775, 787 (N.J. Super. Ct. App. Div. 2015)(citation omitted).

 Here, Defendants have not only failed to produce a written agreement between Mr. Fortuna and A Plus, but they have failed to present sufficient evidence to the Court regarding the terms of any oral agreement. Mr. Fortuna observed Mark Lichter, President of A Plus, "moving product, doing setup" and "moving guys around," and some of Mr. Lichter's employees using a torch, but beyond that, there is no evidence in the record of the terms of any written or oral contract between the parties involving the installation of the roof. (Fortuna Dep. at 249: 5-25.) The Court further agrees with A Plus that Defendants have failed to

14

identify with any particular definiteness any contractual terms breached by A Plus. (A Plus Br. at 2.)  Defendants have therefore failed to raise a genuine dispute of material fact; as a result, the Court grants summary judgment on Third-Party Plaintiffs' breach of contract claim against A Plus.

### 2. Negligence

Next, A Plus argues that it did not breach a duty owed to Defendants because they have provided no basis that A Plus or its President, Mr. Lichter, acted negligently in any of the installation duties on this project. (A Plus Br. at 3-4.)  As a result, A Plus argues that no factual or expert discovery provides any substantive basis for negligent workmanship against A Plus.  The Court agrees.

Under New Jersey law, the four elements essential for the existence of a cause of action in negligence are: (1) a duty of care owed by defendant to plaintiff; (2) a breach of that duty by defendant; and (3) actual and proximate causation, and (4) damages. Jersey Cent. Power & Light Co. v. Melcar Util. Co., 59 A.2d 561, 594 (N.J. 2013); Endre v. Arnold, 692 A.2d 97, 99 (N.J. Super. Ct. App. Div. 1997).  "To act non-negligently is to take reasonable precautions to prevent the occurrence of foreseeable harm to others." Fernandes v. DAR Dev. Corp., 119 A.3d 878, 886 (N.J. 2015) (citations omitted).  The burden of proving such negligence is on the plaintiff; negligence cannot

15

be presumed. See Dawson v. Bunker Hill Plaza Assocs., 673 A.2d 847, 853 (N.J. Super. Ct. App. Div. 1996). Though a plaintiff need not present proof to a certainty, "evidence must be such as to justify an inference of probability as distinguished from the mere possibility of negligence on the defendant's part." Sanders v. Sheraton Hotels & Resorts, No. 11-5489, 2014 WL 60011, at *3 (D.N.J. Jan. 7, 2014)(citations omitted).

Here, there is no evidence in the record that A Plus failed to exercise reasonable care normally possessed by members of the roofing profession. Defendants fail to raise a genuine dispute regarding any instance of Mr. Lichter or any worker in his crew acting negligently. Mr. Fortuna admitted that he never saw Mr. Lichter use a torch while installing the polyglass material, and while he noted that he observed some of the workers using the torch, he does not explain how they failed to exercise reasonable care beyond a general "concern[]" regarding "who was in charge of directing" them. (Fortuna Dep. 249: 5-8, 22-25). These types of conclusory statements are insufficient for the purposes of summary judgment.

Moreover, Defendants fail to raise any genuine dispute of material fact on vicarious liability because they have failed to put forth evidence in the record indicating whether the A Plus workers were employees or independent contractors. See Carter v. Reynolds, 815 A.2d 460, 463 (N.J. 2003) (explaining that if no

16

master-servant relationship exists, no further inquiry needs to take place in the vicarious liability analysis); see also Bahrle v. Exxon Corp., 678 A.2d 225, 321 (N.J. 1996) ("[o]rdinarily, an employer that hires an independent contractor is not liable for the negligent acts of the contractor in the performance of the contract") (citations omitted).  Furthermore, there is no indication in the record regarding the level of control that A Plus had over its workers. See Restatement (Second) of Agency § 220 (1958).  Defendants have therefore failed to raise a genuine dispute of material fact on their negligence claim; thus, summary judgment is granted to A Plus.

## V.    CONCLUSION

The Third-Party Complaints against Polyglass USA and A Plus Roofing will be dismissed; and Polyglass' application for sanctions will be denied without prejudice.  An accompanying Order will be entered.


**January 31, 2017**             **s/ Jerome B. Simandle**
Date                             JEROME B. SIMANDLE
                                 Chief U.S. District Judge