IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAVERIO LACROCE,<br><br>        Plaintiff,<br><br>    v.<br><br>M. FORTUNA ROOFING, INC. AND MICHAEL FORTUNA,<br><br>        Defendants | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-7329 (JBS/KMW)<br><br>**OPINION** |

APPEARANCES:

Salvatore J. Siciliano, Esq.
SICILIANO & ASSOCIATES, LLC
16 South Haddon Ave., P.O. Box 25
Haddonfield, NJ 08033
    Attorney for Plaintiff

John J. Delany, III, Esq.
DELANY McBRIDE
36 Euclid St.
Woodbury, NJ 08096
    Attorney for Defendants M. Fortuna Roofing, Inc. and
    Michael Fortuna

**SIMANDLE, District Court Judge:**

## I.    INTRODUCTION

Pending before the Court is a motion for summary judgment filed Defendants M. Fortuna Roofing, Inc. (hereinafter, "Fortuna Roofing") and Michael Fortuna (hereinafter, "Fortuna") (collectively, "Defendants"). The motions arise from a breach

of contract and negligence action in which Plaintiff Saverio Lacroce (hereinafter, "Plaintiff") filed suit against Defendants after an alleged malfunctioning of a newly-installed Polyglass roof on his commercial property. For the following reasons, Defendants' motion for summary judgment is granted in part and denied in part.

## II. BACKGROUND[1]

**A. Factual Background**

On September 22, 2011, Defendants entered into a written agreement with Plaintiff for the installation of an approximately 56,000 square-foot roof system consisting of white Polyglass "G Torch" applied surface material at Plaintiff's property on 815 Hylton Road, Pennsauken, New Jersey 08110. (Pl. Br., Ex. A.) The contract price of $89,000 was paid in full by Plaintiff. (Pl. Br., ¶ 2.) Defendant obtained the necessary permit in October 2011, and the roof installation was reportedly completed in January 2012.

Shortly following the conclusion of the roof installation, it became apparent to Plaintiff that the roof was not

---

[1] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits accompanying both pending motions for summary judgment. Because Defendants failed to oppose either motion, all facts contained within the Third-Party Defendants' Statements of Material Facts are deemed admitted for the purposes of this motion. See L. Civ. R. 56.1(a)("[A]ny material fact not disputed shall be deemed undisputed for the purposes of the summary judgment motion.").

2

functioning properly, as water began to intrude into the building, causing damage and complaints from Plaintiff's tenants. (Id. at ¶ 4.) Immediately, in order to get a prompt resolution, Plaintiff contacted Defendant Michael Fortuna via telephone. From 2012 through 2014, Plaintiff called Defendant approximately 252 times in an attempt to have Defendants fix the roof and honor the twelve-year warranty that was provided in the agreement. (Pl. Br., Ex. B.) During this time period, Defendants attempted to fix the roof. (Pl. Br. at 2.) However, the Defendants' proposed remedies only served as short-term, temporary fixes. (Id.)

On May 24, 2013, Plaintiff sent a letter to Defendants, stating "Units [were] withholding rent. When will [P]olyglass[2] rep be on site? I know you service the roof when I call, however, a new point of view is necessary." (Pl. Br., Ex. C.) Due to Defendants' failure to respond, Plaintiff sent the same letter to Defendants via telefacsimile. (Pl. Br., Ex. D.) Thereafter, in mid-July 2013, Polyglass USA was alerted of the water intrusion, and the manufacturer sent their National

---

[2] Polyglass USA, the manufacturer of the white polyglass "G Torch" that Defendants installed, was previously named as a Third-Party Defendant. However, the Court granted Polyglass USA's unopposed motion for summary judgment, thus dismissing the manufacturer from the case. See Lacroce v. M. Fortuna Roofing, Inc., Civil Action No. 14-7329 (JBS/KMW), 2017 U.S. Dist. LEXIS 12957 (D.N.J. Jan. 31, 2017).

3

Technical Services Manager to the site in order to perform an examination of the subject roof. (Id.) On July 23, 2013, following the site visit, Polyglass USA's Technical Services Manager, wrote a letter to Defendant Michael Fortuna, advising that their review revealed "various application related concerns" and conditions that were "not compliant with Polyglass and other industry published requirements." (Pl. Br., Ex. E.) It was further determined that "water intrusion concerns [were] a result of product application and not related to any type of manufacturing deficiency." (Id.)

On February 27, 2014, Plaintiff's counsel received an electronic mail from Defendants stating that:

> "There is no contenting (sic) that there are issues at this property, we have been out several time including, in the past months ... we are glad to address any and all of Sam's issues; however its weather conditions that are holding us back .. .I don't want to band aid this roof, I want it right, but to this point this winter, we can only do temp repairs till the weather breaks, I can put crews roof techs from [P]olyglass, to do saturation test for area waterproofing and correct issues."

(Pl. Br., Ex. G.)

On March 14, 2014, Plaintiff received correspondence from Robert Sears, a tenant setting forth in detail the damages to his rental spaces at 815 Hylton Road, and requesting that Plaintiff reimburse him for all damages incurred, including rent and electricity payments, estimated to total over $30,000. (Pl.

Br., Ex. J.) Plaintiff's counsel forwarded this letter to Defendants and informed Defendant Michael Fortuna that they would seek the Court's intervention if all problems associated with the roof was not cured by April 1, 2014. (Pl. Br., Ex. K.) On March 26, 2014, Defendant Fortuna informed Plaintiff's counsel that the roof service work was in progress, and "as the weather improve[d][,] [they] would be on site to continue to resolve all issues." (Pl. Br., Ex. L.) On April 10, 2014, Plaintiff's counsel sent correspondence to Defendant Michael Fortuna regarding his request for an HVAC inspection and further advising and placing on notice that another tenant at the subject property had suffered water damage due to the leaky roof. (Pl. Br., Ex. M.) The tenant also indicated that he had sustained damages of approximately ten thousand dollars ($10,000) for a copier machine. (Id.)

From May 2014 forward, Defendants never returned to the subject property, as instructed by their insurance company (Travelers Insurance). (Pl. Br., Ex. W 79:6-23.) During Mr. Fortuna's second deposition on January 29, 2016, he stated that he would have continued attempting to fix the roof and would have still been there, pursuant to his warranty, but he was notified to cease doing so by his insurance company. (Id.) From May 2014 to November 2014, Plaintiff attempted to resolve this situation through Defendant's insurance company, but, due to a

settlement offer that was "well under the cost of a replacement roof", that effort was unsuccessful. (Pl. Br., ¶¶ 21-29, Ex.'s N, O, P & R.)

During his first deposition in connection with this litigation, Defendant Michael Fortuna testified that "[a]s the contractor on record, [he] would be at fault." (Pl. Br., Ex. T 250-51:18-3.) Fortuna made similar concessions during his second deposition. (Pl. Br., Ex. W 79:10-23.) On December 29, 2015, Mark Lichter, President and Owner of Third-Party Defendant A-Plus Roofing[3] was deposed. During his deposition, Mr. Lichter stated that Defendant Michael Fortuna "has never paid [him] and/or [his] company, not one penny." (A-Plus Dep. 33:11-16.) Regarding the cash receipts produced by Defendant, purporting to show cash payments to A-Plus for their work on Plaintiff's roof, Mr. Lichter stated that he did not recognize the dates or amounts "at all." (Id. at 33:20-24.)

In May 2016, Plaintiff's Expert, Joseph R. Heidt, RRC, CDT of Roof Management Services, Inc., prepared a "Roof System

---

[3] The Court granted Third-Party Defendant A-Plus's unopposed motion for summary judgment, reasoning that there was "no evidence in the record of the terms of any written or oral contract between the parties involving the installation of the roof," and there was no evidence that "A Plus failed to exercise reasonable care normally possessed by members of the roofing profession." Lacroce v. M. Fortuna Roofing, Inc., Civil Action No. 14-7329 (JBS/KMW), 2017 U.S. Dist. LEXIS 12957, at *12-15 (D.N.J. Jan. 31, 2017).

Evaluation Support" report addressing causation and liability. (Pl. Br., Ex. X.) This report addressed the status of the existing roof at 815 Hylton Road, Pennsauken, NJ. Mr. Heidt concluded that Defendants were deficient in both the application of asphalt roof cement and the overall condition of the roof system, which demonstrated a "lack of care, training or understanding of accepted standards . . .." (Id.) Mr. Heidt further opined that "the Owner and his Tenants have experienced water penetration and related consequential damages" resulting from Defendant's deficiencies in installation. (Id.) Additionally, Mr. Heidt's report cited directly to the International Building Code ("IBC"), New Jersey Edition, and details nine instances where Defendants committed a "Breach of Duty or Deviation from Accepted Standards" in relation to the work on Plaintiff's roof. (Id.) These include Defendant's "improper torching of the Polyflex G membrane" or "application of asphalt roof cement on membrane laps." (Id.) Mr. Heidt carefully details the "lack of care, training, or experience" indicated by Defendant's work. (Id.)

**B. Procedural History**

Plaintiff filed a Complaint against Defendants, asserting breach of contract and negligence claims. [Docket Item 1.] In addition to filing their Answer to Plaintiff's Complaint, Defendants brought a Third-Party Complaint against Third-Party

Defendants Polyglass and A Plus. [Docket Item 8.] Both Third-Party Defendants filed Motions for Summary Judgment [Docket Items 56, 57.], which Defendants/Third-Party Plaintiffs did not oppose. These motions were ultimately granted, thus dismissing the Third-Party Defendants from this action. See Lacroce v. M. Fortuna Roofing, Inc., Civil Action No. 14-7329 (JBS/KMW), 2017 U.S. Dist. LEXIS 12957 (D.N.J. Jan. 31, 2017). Subsequently, Defendants filed the present motion for summary judgment, which Plaintiff opposed. [Docket Items 73, 79, 80, 81, 82.]

## III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate

for the court to make at the summary judgment stage. <u>Davis v. Portline Transportes Maritime Internacional</u>, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. <u>Boyle v. Cnty. of Allegheny Pennsylvania</u>, 139 F.3d 386, 393 (3d Cir. 1998)(<u>quoting Anderson</u>, 477 U.S. at 252).

## IV. DISCUSSION

Defendants argue that their motion for summary judgment should be granted because (1) "Plaintiff's cause of action for Negligence is barred by the Economic Loss Doctrine; (2) "Plaintiff cannot prove the necessary causation link between breach and damages"; (3) "Plaintiff's claims against Defendant Michael Fortuna must be dismissed as a matter of law, as Defendant cannot be held personally liable for any alleged damages arising out of performance of the contract between Plaintiff and Defendant M. Fortuna Roofing, Inc." (Def. Br. at 5.) The Court will address these arguments below individually.

9

### A. The Economic Loss Doctrine does not bar Plaintiff's Negligence claim

Defendants argue that Plaintiff's negligence claim is barred by the economic loss doctrine because "[Plaintiff's negligence claim] is nothing more than a contract claim "in tort claim clothing." (Def. Br. at 11.) Although the Court recognizes that New Jersey state courts rarely find a tort remedy to arise from a contractual relationship, the Court finds that this case presents one of the exceptional circumstances where such a finding would be appropriate.

Under New Jersey law, "[a] tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297 (N.J. 2002); The doctrine strives to delineate the boundary separating contract and tort by barring tort theories when the relationship between parties is contractual. See Dean v. Barrett Homes, Inc., 204 N.J. 286, 295, (2010). Indeed, the New Jersey Supreme Court has declared "that the purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties[] whereas [a] contractual duty, by comparison, arises from society's interest in the performance of promises." Spectraserv, Inc. v. Middlesex Cnty. Util. Auth., 2013 N.J.

Super. Unpub. LEXIS 2173, 2013 WL 4764514, at *6 (N.J. Super. App. Div. July 25, 2013) (internal quotations omitted). Thus, "it has long been the law that remedies in tort relating to a breach of contract may not be maintained in addition to those established under the contract itself in the absence of any independent duty owed by the breaching party to the plaintiff." Int'l Minerals & Mining Corp. v. Citicorp N. America, Inc., 736 F. Supp. 587, 597 (D.N.J. 1990).

The Court finds the facts of this case to be comparable to another case heard in this District Court. See McRory v. Zappolo, Civil Action No. 06-3251, 2007 U.S. Dist. LEXIS 80137 (D.N.J. Oct. 29, 2007). In McRory, the plaintiff entered into a contract with the defendant, a contractor, under which the defendant was to perform renovations to the plaintiff's vacation home in exchange for $100,845. Id. at *2. Unfortunately, due to the defendant contractor's failure to complete the renovations before the winter season and failure to properly protect the property from the winter's weather elements, the plaintiff's property sustained serious water damage. Id. The plaintiff sought to hold the defendant contractor liable for breach of contract and negligence. Id. at *3. The defendant contractor argued that plaintiff's negligence claim was impermissible because he owed the plaintiff no duty independent of those

imposed by the contact itself. Id. at *9. However, the court rejected this argument.

In reaching its decision, the court applied the guidelines provided in Mea Constr. Corp. v. Harper, 203 N.J. Super. 486, (N.J. Super. Ct. App. Div. 1985)(providing guidelines to assist in distinguishing between tort and contract claims). The guidelines consisted of the following:

(1) Obligations imposed by law are tort obligations;

(2) Tort obligations may not be disclaimable;

(3) Misfeasance or negligent affirmative conduct in the performance of a promise generally subjects an actor to tort liability as well as contract liability for physical harm to persons and tangible things;

(4) Recovery of intangible economic loss is generally determined by contract;

(5) There is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made;

(6) Duties of affirmative action are often imposed by law apart from the promises made;

(7) Damages for a loss suffered by a promisee in reliance on a promisor to carry out a promise may be recoverable on a tort negligence theory.

Id. at 276 (citing W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS, § 92, at 655 (5th ed. 1984)).

In New Mea Construction Corporation v. Harper, a case where the crux of a negligence counterclaim was that the builder

failed to properly supervise construction, which resulted in the use of lesser quality material than specified by the contract, the Appellate Division held that homeowner's negligence counterclaim could not be maintained because, pursuant to the first guideline, "the obligation to use materials specified by a contract was not an independent duty imposed by law." Id. at 494. Also, the Appellate Division applied the fourth guideline and explained that the injury suffered was not the type ordinarily alleged in a tort case because "there was no personal injury or consequential property damage arising from a traumatic event." Id.

The McRory court distinguished its case from New Mea Construction Corporation v. Harper on the grounds that the defendant contractor in McRory did, in fact, owe a legal duty to the plaintiffs – the general legal duty to avoid damaging another person's property. McRory, supra, at *12. Additionally, the court found that "the nature of the injuries sustained by the plaintiff homeowner sounded in tort", as the plaintiff alleged severe water damage to her home.

Applying these same guidelines to the present case, the Court finds that Defendants owed Plaintiff Saverio Lacroce an independent legal duty to refrain from damaging his property. Moreover, the Court finds that Plaintiff alleged injuries commonly associated with tort cases. Particularly, Plaintiff

13

alleges that Defendants' negligence caused "severe repeated water intrusion damage" to his property. (Compl. at 7, ¶ 10.) Therefore, the Court finds that the economic loss doctrine does not bar Plaintiff's negligence claim.

**B. Plaintiff produced sufficient evidence to establish a genuine dispute as to the causation element of Plaintiff's Breach of Contract and Negligence claims**

Defendants aver that their motion for summary judgment should be granted because "Plaintiff cannot prove the necessary causation link between breach and damages" in order to sustain its breach of contract and negligence claims, "as there is not a single piece of evidence that conclusively links any purported defective workmanship on the part of Defendants to the damage alleged by Plaintiff." (Def. Br. at 5.) The Court is not persuaded by this argument.

To sustain a negligence claim, the following elements must be proven: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages. Townsend v. Pierre, 221 N.J. 36 (N.J. 2015)(internal citations omitted). Proximate cause is defined as "'any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'" Conklin v. Hannoch Weisman, 145 N.J. 395, 418, (N.J. 1996) (internal citations omitted).

To sustain a breach of contract claim, plaintiffs must satisfy the following elements: (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties. See Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co., 722 F.Supp. 184, 219 (D.N.J. 1989) (internal citation omitted); Nat'l Util. Serv., Inc. v. Chesapeake Corp., 45 F. Supp. 2d 438, 448 (D.N.J. 1999). The essential elements of a prima facie claim for breach of contract are: (i) a valid contract, (ii) defective performance by the defendant, and (iii) resulting damages. Coyle v. Alexander's, 199 N.J. Super. 212, 223 (App. Div. 1985).

In its moving papers, Defendants only challenge Plaintiff's production of evidence as to the element of causation, which, as indicated above, is necessary for both of Plaintiff's causes of action. Thus, the Court will only address evidence of causation. Accordingly, the Court notes that Plaintiff has produced the expert report of Joseph R. Heidt, RRC, CDT of Roof Management Services, Inc., which addresses causation and liability. (Pl. Br., Ex. X.) Specifically, after noting the various "construction (workmanship) deficiencies[4]" attributed to Defendants' "lack of care, training or understanding of accepted

---

[4] The expert opined that his examination of the subject roof revealed significant non-conformance to the requirements of the Building Code and Polyglass installation criteria. (Pl. Br., Ex. X at 17.)

standards . . . as it relates to the installation of torch fused modified bitumen membrane roofing on non-residential structures", Mr. Heidt concluded that the "water penetration and related consequential damages" were a result of said deficiencies. (Id. at 15-17.) Though Defendant attempts to undermine the expert report by arguing that "[n]owhere in Mr. Heidt's report is there any explanation of how this alleged deviation caused or contributed to his conclusion/opinion that the alleged deficiencies caused water penetrations(Def. Br. at 13)." the Court finds that, giving all reasonable inferences to Plaintiff as the non-moving party to this motion for summary judgment, a reasonable fact-finder could find that Defendants' alleged failure to adhere to the accepted standards related to the installation of Plaintiff's roof to be the cause of water damage to the Plaintiff's property. Therefore, the Court finds that Plaintiff has presented sufficient evidence to establish a material factual dispute as to the requisite causation element to both of Plaintiff's causes of action.

### C. Defendant Michael Fortuna can be held personally liable for Negligence under the Participation Theory

In rare instances, New Jersey courts have applied the "participation theory" to hold corporate officers personally liable for tortious conduct. See Saltiel, supra, 170 N.J. at 315. "[T]he essence of the participation theory is that a

16

corporate officer can be held personally liable for a tort committed by the corporation when he or she is sufficiently involved in the commission of the tort." Id. at 303. However, as aforementioned, "a tort remedy does not rise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Int'l Minerals & Mining Corp. v. Citicorp N. America, Inc., 736 F. Supp. 587, 597 (D.N.J. 1990).

Here, there does not seem to be any dispute that Defendant Michael Fortuna was substantially involved in the installation of the Polyglass roof and the failed or delayed efforts to remedy the alleged deficient installation which led to further water damage. Rather, Defendant simply argues that "Plaintiff has failed to identify any outside, independent duty that Defendant Michael Fortuna owed to Plaintiff that is separate and apart from those owed by M. Fortuna Roofing, Inc. under the contract." (Def. Br. at 10.) However, as stated above, the Court finds that Defendant Michael Fortuna did owe Plaintiff a duty independent of the contract between Defendant Fortuna Roofing and Plaintiff – a duty to refrain from damaging Plaintiff's property through neglect. For this reason, the Court finds that, at the very least, Plaintiff has produced sufficient evidence to establish a material factual dispute as to whether Defendant Michael Fortuna can be held personally liable for negligence.

However, as discussed below, this does not save Plaintiff's breach of contract claim seeking to hold Defendant Michael Fortuna personally liable, as next discussed.

**D. Defendant Michael Fortuna cannot be held personally liable for Breach of Contract**

Plaintiff seeks to hold Defendant Michael Fortuna personally liable for Breach of Contract (First Count) and in connection with the aforementioned installation and subsequent repairs of the Polyglass roof on Plaintiff's property. (Compl. at 5.) Defendant Michael Fortuna, however, avers that no personal liability can be imposed on him for breach of contract because he signed the contract with Plaintiff only on behalf of the company, Defendant M. Fortuna Roofing, Inc., and "Plaintiff cannot, and has not, pointed to any clear and explicit evidence in the record that indicates an agreement in which Defendant Fortuna intended to take on any personal liability in this matter." (Def. Br, at 5.) The Court agrees.

"Unless the corporate officer extends promises in his individual capacity, the participation theory does not apply in the context of an action for breach of contract." Walsh v. Alarm Sec. Grp., Inc., 95 F. App'x 399, 402 (3d Cir. 2004) (citing A & F Corp. v. Bown, 1996 U.S. Dist. LEXIS 12066, No. 94-CV-4709, 1996 WL 466909, at *5 (E. D. Pa. Aug. 15, 1996)(internal citations omitted).

The Court finds that there is simply nothing in the record to support an argument that Defendant Michael Fortuna made any promises in his individual capacity. In fact, a review of the record indicates that it is clear that Defendant Michael Fortuna, owner of Defendant M. Fortuna Roofing, Inc., signed the contract with Plaintiff on behalf of M. Fortuna Roofing, Inc., as the company name was clearly disclosed on the contracts, work orders, and communications related to this project. (See Def. Br., Ex. B.) Moreover, the Court notes that Plaintiff's mischaracterization of excerpts from Defendant's deposition testimony as admissions of personal liability are without merit, as a review of the complete deposition testimony clearly suggests otherwise. (See Def. Br., Ex. C, 117:23-118:5)(Plaintiff's attorney indeed clarified that when he referred to "you", he was "not referring to [Michael Fortuna] individually", but referring to Fortuna Roofing)). For this reason, the Court finds that Plaintiff's breach of contract claim against Defendant Michael Fortuna, in his individual capacity, will be dismissed.

### V. CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part. Specifically, Defendants' motion for summary judgment is granted with respect to Plaintiff's breach of

19

contract claim against Defendant Michael Fortuna. However, Plaintiff's remaining claims shall proceed consisting of negligence claims against both Defendants and the breach of contract claim against M. Fortuna Roofing, Inc. An accompanying Order will be entered.

**December 12, 2017**                          **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                U.S. District Judge